# EXHIBIT A

**HCDistrictclerk.com**     GUMBA, IRISH vs. LAKEVIEW LOAN SERVICING LLC     5/11/2022
Cause: 202225237     CDI: 7     Court: 129

## APPEALS
No Appeals found.

## COST STATMENTS
No Cost Statments found.

## TRANSFERS
No Transfers found.

## POST TRIAL WRITS
No Post Trial Writs found.

## ABSTRACTS
No Abstracts found.

## NOTICES
No Notices found.

## SUMMARY

### CASE DETAILS

| | | | |
|---|---|---|---|
| **File Date** | 4/27/2022 | | |
| **Case (Cause) Location** | | | |
| **Case (Cause) Status** | Active - Civil | | |
| **Case (Cause) Type** | FORECLOSURE | | |
| **Next/Last Setting Date** | N/A | | |
| **Jury Fee Paid Date** | 4/27/2022 | | |

### CURRENT PRESIDING JUDGE

| | |
|---|---|
| **Court** | 129th |
| **Address** | 201 CAROLINE (Floor: 10) HOUSTON, TX 77002 Phone:7133686180 |
| **JudgeName** | MICHAEL GOMEZ |
| **Court Type** | Civil |

## ACTIVE PARTIES

| Name | Type | Post Jdgm | Attorney |
|---|---|---|---|
| GUMBA, IRISH | PLAINTIFF - CIVIL | | VILT, ROBERT C. |
| LAKEVIEW LOAN SERVICING LLC | DEFENDANT - CIVIL | | GRAHAM, RAYMOND MATTHEW |
| LAKEVIEW LOAN SERVICING LLC MAY BE SERVED BY ITS REGISTERED AGENT | REGISTERED AGENT | | |

## INACTIVE PARTIES
No inactive parties found.

## JUDGMENT/EVENTS

| Date | Description | Order Signed | Post Jdgm | Pgs | Volume /Page | Filing Attorney | Person Filing |
|---|---|---|---|---|---|---|---|
| 5/10/2022 | ANSWER ORIGINAL PETITION | | | 0 | | GRAHAM, RAYMOND MATTHEW | LAKEVIEW LOAN SERVICING LLC |
| 4/27/2022 | ORIGINAL PETITION | | | 0 | | VILT, ROBERT C. | GUMBA, IRISH |

## SETTINGS

| Date | Court | Post Jdgm | Docket Type | Reason | Results | Comments | Requesting Party |
|---|---|---|---|---|---|---|---|
| 4/29/2022 02:00 PM | 269 | | Ancillary Docket | TEMPORARY RESTRAINING ORDER (MOTION FOR) | Passed | PER ATTY 4/29/2022 | VILT, ROBERT C. |

**SERVICES**

| Type | Status | Instrument Person | Requested | Issued | Served | Returned | Received | Tracking | Deliver To |
|---|---|---|---|---|---|---|---|---|---|
| CITATION (CERTIFIED) | SERVICE ASSIGNED TO CLERK/NOT ISSUED | LAKEVIEW LOAN SERVICING LLC MAY BE SERVED BY ITS REGISTERED AGENT | 4/27/2022 | | | | | 74000014 | CVC/CTM SVCE BY CERTIFIED MAIL |

211 E 7TH STREET SUITE 620 AUSTIN TX 78701

**DOCUMENTS**

| Number | Document | Post Jdgm | Date | Pgs |
|---|---|---|---|---|
| 101848537 | Defendant's Original Answer & Affirmative Defenses | | 05/10/2022 | 4 |
| 101641816 | Plaintiff's Original Petition Application For Injunctive Relief and Request for Disclosures | | 04/27/2022 | 13 |
| -> 101641817 | Affidavit of Irish Gumba | | 04/27/2022 | 2 |
| -> 101641821 | Exhibit 01 | | 04/27/2022 | 16 |
| -> 101641822 | Exhibit 02 | | 04/27/2022 | 3 |
| -> 101641820 | Exhibit 02 | | 04/27/2022 | 3 |
| -> 101641818 | Proposed Temporary Restraining Order | | 04/27/2022 | 3 |
| 101643308 | Civil Process Request Form | | 04/27/2022 | 1 |

4/27/2022 12:55 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 63957574
By: Cecilia Thayer
Filed: 4/27/2022 12:55 PM

# 2022-25237 / Court: 129

### CAUSE NO. _____

| | | |
|---|---|---|
| **IRISH GUMBA** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **LAKEVIEW LOAN SERVICING, LLC** | § | **_____ JUDICIAL DISTRICT** |

### PLAINTIFF'S ORIGINAL PETITION, APPLICATION FOR INJUNCTIVE RELIEF, AND REQUEST FOR DISCLOSURES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Irish Gumba, Plaintiff herein, filing this her Original Petition, Application for Injunctive Relief, and Request for Disclosures complaining of Lakeview Loan Servicing, LLC, Defendant herein, and for causes of action would respectfully show the Court as follows:

### DISCOVERY

1.      Plaintiff intends to conduct discovery under Texas Rules of Civil Procedure 190.3 (Level 2).

### PARTIES

2.      Irish Gumba is an individual who resides in Harris County, Texas and may be served with process on the undersigned legal counsel.

3.      Lakeview Loan Servicing, LLC is an entity formed under the laws of the State of Delaware which conducts business in Harris County, Texas and may be served with process via its Registered Agent as follows:

Lakeview Loan Servicing, LLC
c/o Corporation Service Company
211 E. 7th Street, Suite 620
Austin, TX   78701

**JURISDICTION AND VENUE**

4.      The Court has jurisdiction over Lakeview Loan Servicing, LLC because the

Defendant is an entity formed under the laws of the State of Delaware which conducts business

in Harris County, Texas.

5.      The Court has jurisdiction over the controversy because the damages are within

the jurisdictional limits of the Court. Venue is mandatory in Harris County, Texas because the

subject matter of this lawsuit involves real property which is located in Harris County, Texas.

Further, all or a substantial part of the events or omissions giving rise to Plaintiff's causes of action

occurred in Harris County, Texas thus venue is proper under §15.002(a)(1) of the Texas Civil

Practice and Remedies Code.

**RELEVANT FACTS**

6.      The subject matter of this lawsuit is the real property and the improvements

herein located at 13622 Pointed Edge Lane, Cypress, TX 77429 (the "Property").

7.      Irish Gumba ("Plaintiff") purchased the Property on or about April 14, 2016.During

the process of purchasing the Property, Plaintiff executed a Promissory Note ("Note") in the

amount of $247,426.00 as well as a Deed of Trust through a Federal Housing Administration loan

(FHA Case No. 512-2258914-703) in which Cornerstone Home Lending, Inc. is listed as the Lender.

A true and correct copy of the Deed of Trust is attached hereto as Exhibit "1" and incorporated

herein for all purposes.

8.      Upon information and belief, the Loan and related Deed of Trust  were

subsequently transferred to Lakeview Loan Servicing, LLC ("Defendant") for which Flagstar Bank,

FSB services the loan.

9.      As Plaintiff was starting to face financial difficulties due to the COVID-19 pandemic, she contacted Carrington to pursue loss mitigation options - Carrington granted her a Covid-19 Forbearance and promised her that the arrearages would accumulate and be moved to the back end of the note.

10.      After the forbearance ended, Plaintiff contacted Carrington to see when her payment was going to resume. Carrington then informed her that they were foreclosing on the Property and that there was nothing that they could do to stop the process.

11.      Plaintiff began receiving numerous amounts of advertisements from potential buyers and investors informing her that her Property was posted for the May 3, 2022 foreclosure sale – irrespective of the fact that she never received a notice of default, notice of acceleration, or notice of foreclosure sale from Carrington. A true and correct copy of Notice of [Substitute] Trustee's Sale, which was provided to Plaintiff by the undersigned legal counsel, is attached hereto as Exhibit "2" and incorporated herein for all purposes.

12.      Instead of following proper procedure pursuant to the Texas Property Code as well as the related Deed of Trust, Carrington failed to provide face-to-face counseling pursuant to HUD Regulations incorporated in the Deed of Trust under §9(d) as well as violated Plaintiff's due process rights by simply posting her Property for foreclosure sale. Specifically, the foreclosure scheduled to be conducted by Carrington should be void as a matter of law because Carrington did not provide Plaintiff with the statutory notices pursuant to Section 13 of the Deed of Trust. Carrington's failure to provide Plaintiff with the statutory notices deprives Plaintiff of her due process rights and the opportunity to cure pursuant to Section 10 of the Deed of Trust.

13.     Accordingly, Plaintiff alleges that Carrington is about to wrongfully sell her Property at a foreclosure sale on May 3, 2022 without providing the required face-to-face counseling, the required statutory notices, and in violation of Plaintiff's due process rights.

## CLAIMS
## AGENCY & RESPONDEAT SUPERIOR

14.     Wherever it is alleged that Defendant did anything, or failed to do anything, it is meant that such conduct was done by Defendant's employees, principals, agents, attorneys, and/or affiliated entities, in the normal or routine scope of their authority, or ratified by Defendant, or done with such apparent authority so as to cause Plaintiff to reasonably rely that such conduct was within the scope of their authority. Plaintiff did rely to Plaintiff's detriment on Defendant's representatives being vested with authority for their conduct. Defendant is vicariously liable for the conduct of their employees, principals, agents, attorneys, affiliated entities, and representatives of Defendant's affiliated entities by virtue of respondent superior, apparent authority, and estoppel doctrines.

## FIRST CAUSE OF ACTION:
## DECLARATORY JUDGMENT

15.     To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations made in paragraphs 1 through 14 as if set forth fully herein.

16.     Plaintiff seeks a determination of the rights of the parties pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 37.001, *et seq*. (West).  In particular, Plaintiff seeks a determination that the pending foreclosure sale of her Real Property is wrongful because Defendant failed to properly follow the procedures as set forth in the Deed of Trust, the Texas Property Code as well as the Texas Constitution.  Specifically, the Defendant failed (a) provide a face-to-face counseling session

pursuant to §15(d) of the Deed of Trust, and (b) to provide proper notice and opportunity to cure pursuant to Texas Property Code 51.002.

17.     Further, Plaintiff seeks a determination that the pending foreclosure sale of her Real Property, is wrongful because Defendant was precluded from taking any action whatsoever to foreclose on Plaintiff's Property without first complying with the Texas Property Code and HUD Regulations pursuant to the Deed of Trust.

18.     Section 51.002 of the Texas Property Code governs the sale of real property under deeds of trust or other contract liens. Tex. Prop. Code Ann. § 51.002 (West); Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 569 (Tex. 2001).  In particular, section 51.002(d) provides that "[n]otwithstanding any agreement to the contrary, the mortgage servicer ... shall serve a debtor in default ... with written notice by certified mail stating that the debtor is in default ... and giving the debtor at least 20 days to cure the default before notice of the sale can be given." Id. § 51.002(d). Section 51.002(b) states that notice of sale, in turn, must be given at least twenty-one days before the date of the sale and specifies various locations whose the notice must be made available. Id. §§ 51.002(b)(1)-(3).  In addition to the minimum statutory requirements, the deed of trust executed by the debtor-mortgagor usually details the agreed contractual terms and conditions for foreclosure of real property.

## SECOND CAUSE OF ACTION:
### BREACH OF CONTRACT

19.     To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations made in paragraphs 1 through 18 as if set forth fully herein.

20.     The actions committed by Defendant constitutes breach of contract because:

A.      These exists a valid, enforceable contract between Plaintiff and Defendant;

B.      Plaintiff has standing to sue for breach of contract;

C.      Plaintiff performed her contractual obligations under the Deed of Trust;

D.      Defendant breached the parties' agreement by violating paragraph 13 of the Deed of Trust by failing to send all required foreclosure notices to Plaintiff at the proper address, failing to comply with HUD Regulations pursuant to section 15,  as well as violating section 18 for refusing to give Plaintiff the opportunity to cure the default that Plaintiff had fraudulently been induced to creating; and

E.      The breaches of contract by Defendant caused Plaintiff's injury – actual damages which include, but are not limited to, loss of alternative loss mitigation options, violating Plaintiff's due process rights, litigation cost, interest on the balance of unpaid mortgage payments since the filing of this lawsuit, and damage to Plaintiff's credit.

### THIRD CAUSE OF ACTION:
### VIOLATION OF TEXAS PROPERTY CODE §51

21.     To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations made in paragraphs 1 through 20 as if set forth fully herein.

22.     Pursuant to the provisions of the Texas Property Code, the holder of a note must ordinarily give notice to the maker of the holder's intent to accelerate the time for payment as well as notice of acceleration. If the mortgagee intends to accelerate the maturity of the debt, the

notice must unequivocally inform the mortgagor of the mortgagee's intention. A proper notice of default must give the borrower notice that the alleged delinquency must be cured; otherwise, the loan will be accelerated, and the property will go to foreclosure. Prior to a foreclosure action, the noteholder is also required to give the homeowners clear and unequivocal acceleration notice. Effective acceleration requires two acts: notice of intent to accelerate and notice of acceleration.

23.     The actions committed by Defendant constitutes violations of the Texas Property Code §51 because Defendant never sent proper and timely notice of default, the opportunity to cure the default, notice of intent to accelerate the debt, notice of acceleration, and notice of foreclosure sale which are required in order for Defendant to foreclose on its lien rights to the Property.

**FOURTH CAUSE OF ACTION:**
**PROMISSORY ESTOPPEL**

24.     To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations made in paragraphs 1 through 23 as if set forth fully herein.

25.     The actions committed by Defendant constitute promissory estoppel because:

   A.     Defendant made a promise to Plaintiff to move the arrearages created from the COVID-19 forbearance to the back of the note.

   B.     Plaintiff reasonably and substantially relied on the promise to her detriment.

**FIFTH CAUSE OF ACTION:**
**FRAUD IN THE INDUCEMENT**

26.     To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations made in paragraphs 1 through 25 as if set forth fully herein.

27.     Plaintiff shows that Defendant made material, false representations to Plaintiff with the knowledge of their falsity or with reckless disregard of the truth with the intention that such representations be acted upon by Plaintiff and that Plaintiff relied on these representations to her detriment.

28.      Plaintiff would Further show that Defendant concealed or failed to disclose material facts within the knowledge of Defendant, that Defendant knew that Plaintiff did not have knowledge of the same and did not have equal opportunity to discover the truth, and that Defendant intended to induce Plaintiff to enter into multiple transactions which made the basis of this suit by such concealment or failure to disclose.

29.     Defendant used deceit or trickery to induce Plaintiff to act to her disadvantage, by causing her to enter into a forbearance but failed to disclose that once the forbearance was up all months that had been part of the forbearance would need to be paid in one lump sum. But for the deceit and trickery of Defendant, Plaintiff would not have entered into said forbearance agreement.  The deceit and trickery used by Defendant, when made, was known to contain false and misleading representations or were recklessly asserted by Defendant without any knowledge of truth.  Furthermore, Defendant was aware, or should have been aware, of Plaintiff's lack of sophistication with financial and/or real estate transactions.

30.     A confidential or "informal fiduciary" relationship existed between the parties.

31.     Defendant had a duty to disclose these facts to Plaintiff and was deliberately silent when Defendant had a duty to speak.

32.     Defendant used such trickery and deceit and false representations with the intent that Plaintiff would end up defaulting on the loan so that Defendant could eventually post the Property for a Foreclosure Sale.

33.     Plaintiff acted in reliance on the misrepresentations and the reliance on such misrepresentations were justifiable and reasonable.

34.     Furthermore, Defendant knew Plaintiff was ignorant of the nondisclosed facts and lacked opportunity to discover the truth.

35.     As a result of the unconscionable actions and intentional nondisclosure of Defendant set out above, Plaintiff was harmed, and should be allowed recovery of her actual damages.  In order to fully compensate Plaintiff, equitable relief in the form of rescission is also proper.  The actions of the Defendant also warrant exemplary damages to deter such conduct in the future.

**DAMAGES:**
**ACTUAL DAMAGES**

36.     Plaintiff is entitled to recover her actual damages from Defendant for which Plaintiff pleads in an amount which does not exceed the jurisdictional limits of this Court.

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

37.     Plaintiff endured stress, anxiety, and loss of sleep as a result of Defendant's misconduct. Accordingly, Plaintiff is entitled to recover mental anguish damages from Defendant for which she pleads in an amount which does not exceed the jurisdictional limits of this Court.

## EXEMPLARY DAMAGES

38.     Plaintiff is entitled to recover her exemplary damages from Defendant for which

Plaintiff pleads in an amount which does not exceed the jurisdictional limits of this Court.

## ATTORNEYS' FEES

39.     Plaintiff was forced to employ the undersigned attorneys and has agreed to pay

them reasonable attorneys' fees for their services. Plaintiff is entitled to recover reasonable

attorneys' fees pursuant to Chapter 38 of the Texas Civil Practices & Remedies Code for which

Plaintiff pleads in an amount which does not exceed the jurisdictional limits of this Court.

## CONDITIONS PRECEDENT

40.     All conditions precedent to the Plaintiff's right to bring these causes of action have

been performed, have occurred, or have been waived.

## REQUEST FOR DISCLOSURES

41.     Lakeview Loan Servicing, LLC is hereby requested to disclose to Irish Gumba,

within 50 days of service of this request, the information and material described in Rule 194 of

the Texas Rules of Civil Procedure.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER

42.     To the extent not inconsistent herewith, Plaintiff incorporates by reference the

allegations made in paragraph 1 through paragraph 41 as if set forth fully herein.

43.     Unless Defendant is enjoined, Plaintiff will suffer probable harm which is imminent

and irreparable since Defendant is about to sell Plaintiff's Property at a foreclosure sale on May 3,

2022 thereby depriving Plaintiff of ownership of the Property.  Further, Defendant may take legal

action to evict or otherwise cause Plaintiff to be dispossessed of the Property. Plaintiff has no adequate remedy at law because the subject matter is real property and any legal remedy of which Plaintiff may avail himself will not give her as complete, equal, adequate, and final a remedy as the injunctive relief sought in this Application.

44.    Therefore, Plaintiff request that this Court issue a Temporary Restraining Order and, thereafter, a Temporary Injunction, to restrain Defendant from selling the real property which is the subject matter of this lawsuit commonly known as 13622 Pointed Edge Lane, Cypress, TX 77429 as well as from taking any legal action to evict Plaintiff and any other occupants from, or enforcing a writ of possession regarding, the aforementioned property.

45.    Plaintiff Further requests that, upon trial on the merits, Defendant be permanently enjoined from the same acts listed in Paragraph 44 above.

46.    Plaintiff is likely to prevail on the merits of the lawsuit as described above.

47.    The granting of the relief requested is not inconsistent with public policy considerations.

**<u>BOND</u>**

48.    Plaintiff is willing to post a reasonable temporary restraining order bond and requests that the Court set such bond.

**PRAYER**

WHEREEFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that:

A.      Defendant be cited to appear and answer herein;

B.      The Court conduct a hearing on Plaintiff's Application for Injunctive Relief;

C.      A Temporary Restraining Order be issued restraining Defendant, its agents,

        employees, officers, directors, shareholders, and legal counsel, and those acting

        in concert or participation with them who receive actual notice of the Order, by

        personal service or otherwise, from selling the real property which is the subject

        matter of this lawsuit and is commonly known as 13622 Pointed Edge Lane,

        Cypress, TX 77429 as well as taking any legal action to evict Plaintiff and any other

        occupants from, or enforcing a writ of possession regarding, the aforementioned

        property;

D.      A Permanent Injunction be entered enjoining Defendant from the same acts listed

        in Paragraph C above; and

E.      Upon final hearing or trial hereof, the Court order a judgment in favor of Irish

        Gumba against Lakeview Loan Servicing, LLC for her actual damages, mental

        anguish damages, exemplary damages, reasonable attorneys' fees, all costs of

        court, and such other and Further relief, both general and special, at law or in

        equity, to which Plaintiff may be entitled.

Respectfully submitted,

VILT LAW, P.C.

By: _____

ROBERT C. VILT
Texas Bar Number 00788586
Email: clay@viltlaw.com
5177 Richmond Avenue, Suite 1142
Houston, Texas 77056
Telephone:    713.840.7570
Facsimile:    713.877.1827
ATTORNEYS FOR PLAINTIFF

CAUSE NO. _____

| | | |
|---|---|---|
| **IRISH GUMBA** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **LAKEVIEW LOAN SERVICING, LLC** | § | **_____ JUDICIAL DISTRICT** |

---

## AFFIDAVIT OF IRISH GUMBA

---

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | |
| | § | **KNOW ALL MEN BY THESE PRESENTS** |
| **COUNTY OF HARRIS** | § | |

BEFORE ME, the undersigned authority, on this day personally appeared Irish Gumba who, after being duly sworn, deposes and says:

1. My name is Irish Gumba. I am the I in the above-captioned lawsuit. I have read the Original Petition, Application for Injunctive Relief, and Request for Disclosures to which this Affidavit relates and offer this Affidavit in support of the statements and arguments asserted therein.

2. The subject matter of this lawsuit is the real property and the improvements herein located at 13622 Pointed Edge Lane, Cypress, TX 77429 (the "Property").

3. I purchased the Property on or about April 14, 2016.During the process of purchasing the Property, I executed a Promissory Note ("Note") in the amount of $247,426.00 as well as a Deed of Trust through a Federal Housing Administration loan (FHA Case No. 512-2258914-703) in which Cornerstone Home Lending, Inc. is listed as the Lender.

4. Upon information and belief, the Loan and related Deed of Trust were subsequently transferred to Lakeview Loan Servicing, LLC ("Defendant") for which Flagstar Bank, FSB services the loan.

5. As I was starting to face financial difficulties due to the COVID-19 pandemic, I contacted Carrington to pursue loss mitigation options - Carrington granted me a Covid-19 Forbearance and promised me that the arrearages would accumulate and be moved to the back end of the note.

6. After the forbearance ended, I contacted Carrington to see when my payment was going to resume. Carrington then informed me that they were foreclosing on the Property and that there was nothing that they could do to stop the process.

7. I began receiving numerous amounts of advertisements from potential buyers and investors informing my that me Property was posted for the May 3, 2022 foreclosure sale – irrespective of the fact that I never received a notice of default, notice of acceleration, or notice of foreclosure sale from Carrington.

8. Accordingly, I allege that Lakeview is about to wrongfully sell my Property at a foreclosure sale on May 3, 2022 without providing the required face-to-face counseling, the required statutory notices, and in violation of my due process rights.

9. The latest foreclosure posting has severely affected my personal and professional life. I have trouble sleeping and focusing on simple tasks. My anxiety level as reached a level I have never experienced in my life and my stress level has negatively impacted both my business and my family life."

I have read the foregoing Affidavit and attest that the information contained therein is true and correct in all respects based upon my personal knowledge.

_____
IRISH GUMBA

SUBSCRIBED AND SWORN TO BEFORE ME on this the 20th day of April, 2022.

_____  Erika Rix
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

My commission expires:
11-19-2025

DIPAK P. PATEL
Notary Public, State of Texas
Comm. Expires 11-19-2025
Notary ID 129631013

RP-2016-158799
04/19/2016   ER   $72.00

Return To:
**CORNERSTONE HOME LENDING, INC.**
**1177 WEST LOOP SOUTH #200**
**HOUSTON, TEXAS 77027**
Attn.: **FINALIZATION DEPARTMENT**
Loan No.: 1700009787
Prepared By:
**CORNERSTONE HOME LENDING, INC.**
**1177 WEST LOOP SOUTH SUITE 200**
**HOUSTON, TEXAS 77027**

[Space Above This Line For Recording Data]

State of Texas

# DEED OF TRUST

FHA Case No.

**512-2258914-703**
MIN 1001770-1700009787-2
MERS TELEPHONE: (888) 679-6377

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A)   "**Security Instrument**" means this document, which is dated April 14, 2016, together with all Riders to this document.
(B)   "**Borrower**" is IRISH GRACE BACALZO GUMBA  A SINGLE WOMAN. Borrower is the grantor under this Security Instrument.
(C)   "**Lender**" is CORNERSTONE HOME LENDING, INC.. Lender is a corporation organized and existing under THE STATE OF TEXAS. Lender's address is 1177 WEST LOOP SOUTH SUITE 200, HOUSTON, TEXAS 77027. Lender includes any holder of the Note who is entitled to receive payments under the Note.
(D)   "**Trustee**" is SCOTT R. VALBY. Trustee's address is 1177 WEST LOOP SOUTH, SUITE 200A, HOUSTON, TEXAS 77027.
(E)   "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is a beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F)   "**Note**" means the promissory note signed by Borrower and dated April 14, 2016. The Note states that Borrower owes Lender Two Hundred Forty Seven Thousand Four Hundred Twenty Six And 00/100 Dollars (U.S. $247,426.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than May 1, 2046.
(G)   "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

TEXAS—Single Family—FHA SECURITY INSTRUMENT

09/14

Page 1 of 13

**DOMINION TITLE LLC** 1520107244   DHM/ISO



EXHIBIT
**1**

**(H)** "**Loan**" means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[ ] Adjustable Rate Rider       [ ] Condominium Rider       [ ] Second Home Rider
[X] Planned Unit Development Rider     [ ] 1-4 Family Rider
                                  [ ] Other(s) [specify]

**(J)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** "**Escrow Items**" means those items that are described in Section 3.

**(N)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** "**Secretary**" means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(S)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

       County               of               **HARRIS:**
    [Type of Recording Jurisdiction]                  [Name of Recording Jurisdiction]

TEXAS—Single Family—FHA SECURITY INSTRUMENT                            09/14

LOT TWENTY-FIVE (25), IN BLOCK TWO (2), OF ENCLAVE AT NORTHPOINTE SECTION FOUR (4), AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN/UNDER FILM CODE NO. 674943 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

Parcel ID Number:
which currently has the address of **13622 POINTED EDGE LANE** [Street], **CYPRESS** [City], **TEXAS** [State] **77429** [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1.    Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

TEXAS—Single Family—FHA SECURITY INSTRUMENT                                                                                    09/14

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and, Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

RP-2016-158799<br/>UNOFFICIAL COPY



TEXAS—Single Family—FHA SECURITY INSTRUMENT                                   09/14

**4.    Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5.    Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee.  Lender shall have the right to hold the policies and renewal certificates.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds.  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds

TEXAS—Single Family—FHA SECURITY INSTRUMENT                                                                 09/14

shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.     Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

**7.     Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.     Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.     Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

TEXAS—Single Family—FHA SECURITY INSTRUMENT                                                                                    09/14

RP-2016-158799

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.    Assignment of Miscellaneous Proceeds; Forfeiture.**  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11.    Borrower Not Released; Forbearance By Lender Not a Waiver.**  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured

TEXAS—Single Family—FHA SECURITY INSTRUMENT                                                         09/14

by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12.     Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13.     Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14.     Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15.     Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16.     Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

TEXAS—Single Family—FHA SECURITY INSTRUMENT                                                                       09/14

**17.    Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18.    Borrower's Right to Reinstate After Acceleration.**  If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.  However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19.    Sale of Note; Change of Loan Servicer; Notice of Grievance.**  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20.    Borrower Not Third-Party Beneficiary to Contract of Insurance.**  Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower acknowledges and agrees that  the Borrower is not a third party beneficiary to the

TEXAS—Single Family—FHA SECURITY INSTRUMENT                                                        09/14

RP-2016-158799

contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21.   Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22.   Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public venue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale

TEXAS—Single Family—FHA SECURITY INSTRUMENT                                        09/14

RP-2016-158799

UNOFFICIAL COPY

in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

**23.    Release.**  Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24.    Substitute Trustee; Trustee Liability.**  All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together.  Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property, the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct.  Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25.    Subrogation.**  Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property.  Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26.    Partial Invalidity.**  In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27.    Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property.**  Check box as applicable:

**[X] Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property.  The Note is also primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

**[ ] Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

**[ ] Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference.  Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

**[ ] Acknowledgment of Cash Advanced Against Non-Homestead Property.**

TEXAS—Single Family—FHA SECURITY INSTRUMENT                                                             09/14

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

28.     **Loan Not a Home Equity Loan.**  The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution.  If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option.  Borrower agrees to execute any documentation necessary to comply with this Section 28.


UNOFFICIAL COPY

RP-2016-158799

TEXAS—Single Family—FHA SECURITY INSTRUMENT

Page 12 of 13

09/14

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.



_____ (Seal)
IRISH GRACE BACALZO GUMBA                    -Borrower

**STATE OF TEXAS**

County of HARRIS

Before me __the undersigned_____ on this day personally appeared **IRISH GRACE BACALZO GUMBA** known to me (or proved to me on the oath of _____, or through _____TDL_____) to be the person whose name(s) is/are subscribed to the foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 14th day of April, 2016

(Seal)

W. Santana

Notary Public

My Commission Expires:

CORNERSTONE HOME LENDING, INC. NMLS: 2258            THERESITA RUSH NMLS: 208936



TEXAS—Single Family—FHA SECURITY INSTRUMENT                     09/14

Page 13 of 13

RP-2016-158799

UNOFFICIAL COPY

Loan No.: 1700009787
512-2258914-703

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **14th** day of **April, 2016**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **CORNERSTONE HOME LENDING, INC.** ("Lender") of the same date and covering the Property described in the Security Instrument and located at:

### 13622 POINTED EDGE LANE, CYPRESS, TEXAS 77429

[Property Address]

The Property Address is a part of a planned unit development ("PUD") known as

### ENCLAVE AT NORTHPOINTE SEC 4

[Name of Planned Unit Development]

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

    A.  So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then:

        (i)  Lender waives the provision in Paragraph 3 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and

        (ii)  Borrower's obligation under Paragraph 5 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

    Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

    B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

    C.  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

FHA PUD Rider
fhapud

Page 1 of 2

UNOFFICIAL COPY

RP-2016-158799

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

IRISH GRACE BACALZO GUMBA _____ (Seal)

CORNERSTONE HOME LENDING, INC. NMLS: 2258          THERESITA RUSH NMLS: 208936

UNOFFICIAL COPY

RP-2016-158799

FHA PUD Rider                    Page 2 of 2

RP-2016-158799
# Pages 16
04/19/2016 08:37 AM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
STAN STANART
COUNTY CLERK
Fees  $72.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.

*Stan Stanart*

COUNTY CLERK
HARRIS COUNTY, TEXAS

TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

FRCL-2022-1384

FILED 3/24/2022   10:08:41 AM

13622 POINTED EDGE LANE
CYPRESS, TX 77429

00000009400334

## NOTICE OF [SUBSTITUTE] TRUSTEE'S SALE

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

1. **Date, Time, and Place of Sale.**
   Date:   May 03, 2022
   Time:   The sale will begin at 10:00 AM or not later than three hours after that time.
   Place:  BAYOU CITY EVENT CENTER PAVILION, 9401 KNIGHT RD, HOUSTON TX IN THE DESIGNATED AREA OUTLINED IN THE COMMISSIONERS COURT ORDER or as designated by the county commissioners.

2. **Terms of Sale.** Cash.

3. **Instrument to be Foreclosed.** The instrument to be foreclosed is the Deed of Trust or Contract Lien dated April 14, 2016 and recorded in Document CLERK'S FILE NO. RP2016-158799 real property records of HARRIS County, Texas, with IRISH GRACE BACALZO GUMBA, grantor(s) and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE, mortgagee.

4. **Obligations Secured.** Deed of Trust or Contract Lien executed by IRISH GRACE BACALZO GUMBA, securing the payment of the indebtednesses in the original principal amount of $247,426.00, and obligations therein described including but not limited to the promissory note and all modifications, renewals and extensions of the promissory note. LAKEVIEW LOAN SERVICING, LLC is the current mortgagee of the note and Deed of Trust or Contract Lien.   *$247,426*

5. **Property to Be Sold.** The property to be sold is described in the attached Exhibit A.

6. **Mortgage Servicer Information.** The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code § 51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the lien securing the Property referenced above. FLAGSTAR BANK, F.S.B., as Mortgage Servicer, is representing the current mortgagee, whose address is:

c/o FLAGSTAR BANK, F.S.B.
5151 CORPORATE DRIVE
TROY, MI 48098


Auction or Kesler

FCTX_NTSS.rpt (11/17/2020)-S Ver-03


NTSS00000009400334

Page 1 of 3


EXHIBIT
2

13622 POINTED EDGE LANE
CYPRESS, TX 77429

00000009400334

**THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.**

The undersigned as attorney for the mortgagee or mortgage servicer does herby remove the original trustee and all successor substitute trustees and appoints in their steed CARL MEYERS, LEB KEMP, TRACI YEAMAN, KELLY MCDANIEL, ISRAEL CURTIS, JOHN SISK, CLAY GOLDEN, STEPHEN MAYERS, COLETTE MAYERS, TIM WORSTELL, AARON CRAWFORD, WAYNE WHEAT, JOSHUA SANDERS, CARY CORENBLUM, MATTHEW HANSEN, EVAN PRESS, AUCTION.COM, M. SAMUEL DAFFIN II, BECKETT FRAPPIER, CINDY SANCHEZ, JEFF FLEMMING, RYAN BOURGEOIS, NATHAN SANCHEZ, REX KESLER, THOMAS REDER whose address is c/o BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP, 4004 Belt Line Road, Suite 100, Addison, Texas 75001-4320 as Substitute Trustee, who shall hereafter exercise all powers and duties set aside to the said original trustee under the said Deed of Trust; and further does hereby request, authorize, and instruct said Substitute Trustee to conduct and direct the execution of remedies set aside to the beneficiary therein.

*[signature]*

Auction or Kesler

Israel Saucedo

### Certificate of Posting

My name is _____, and my address is c/o 4004 Belt Line Road, Suite 100, Addison, Texas 75001-4320. I declare under penalty of perjury that on _____ I filed at the office of the HARRIS County Clerk and caused to be posted at the HARRIS County courthouse this notice of sale.

_____

Declarants Name: _____

Date: _____

FCTX_NTSS.rpt (11/17/2020)-S  Ver-03

Page 2 of 3

TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

FRCL-2022-1384

FILED 3/24/2022 10:08:41 AM

FILED 3/24/2022 10:08:41 AM   FRCL-2022-1384   TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

13622 POINTED EDGE LANE
CYPRESS, TX 77429

00000009400334

00000009400334

HARRIS

EXHIBIT "A"

LOT TWENTY-FIVE (25), IN BLOCK TWO (2), OF ENCLAVE AT NORTHPOINT E #4 i FOUR (4), AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 674943 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.



FCTX_NTSS.rpt (11/17/2020) Ver-03

4/27/2022 12:55:26 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 63957574
By: THAYER, CECILIA
Filed: 4/27/2022 12:55:26 PM

CAUSE NO. _____

| | | |
|---|---|---|
| **IRISH GUMBA** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **LAKEVIEW LOAN SERVICING, LLC** | § | **_____ JUDICIAL DISTRICT** |

## TEMPORARY RESTRAINING ORDER

ON THIS DATE Plaintiff's Application for Temporary Restraining Order was heard and considered before this Court. Based upon the pleadings, exhibits, records, and documents filed by Plaintiff and presented to the Court, as well as the arguments of legal counsel at the hearing, IT CLEARLY APPEARS THAT:

A.      Unless Lakeview Loan Servicing, LLC, their agents, employees, directors, shareholders, and legal counsel are immediately enjoined and restrained, Lakeview Loan Servicing, LLC will proceed with a foreclosure sale of Plaintiff's property commonly known as 13622 Pointed Edge Lane, Cypress, TX 77429 and Plaintiff will suffer an immediate and irreparable harm and will have no adequate remedies under the law, and may commit the foregoing before notice and hearing on Plaintiff's Application for Temporary Injunction.

B.      Plaintiff will suffer an irreparable harm if Lakeview Loan Servicing, LLC, their agents, employees, directors, shareholders, and legal counsel are not restrained immediately because Plaintiff will lose her fee simple title and ownership of her Property, which is Plaintiff's residence and homestead and is thus unique and irreplaceable, and there is no adequate remedy at law to grant Plaintiff complete, final, and equitable relief.

C.      Plaintiff has provided notice to Lakeview Loan Servicing, LLC informing them of the filing of Plaintiff's Application for Temporary Restraining Order prior to this Court conducting this hearing.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Lakeview Loan Servicing, LLC, their agents, employees, directors, shareholders, and legal counsel are hereby ORDERED to immediately cease and desist from attempting or proceeding with any foreclosure sale of Plaintiff's property commonly known as 13622 Pointed Edge Lane, Cypress, TX 77429 as well as from taking any legal action to evict Plaintiff and any other occupants from, or enforcing a writ of possession regarding, the aforementioned property. Lakeview Loan Servicing, LLC, their agents, employees, directors, shareholders, and legal counsel are hereby immediately enjoined and restrained from the date of entry of this Order until fourteen (14) days hereafter, or until further ordered by this Court.

**IT IS FURTHER THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Application for Temporary Injunction be heard on the _____day of May 2022 starting at _____ a.m./p.m. and that Lakeview Loan Servicing, LLC is commanded to appear at that time and show cause, if any, why a temporary injunction should not be issued against Lakeview Loan Servicing, LLC

The Clerk of the above-entitled court shall issue a notice of entry of a temporary restraining order in conformity with the law and the terms of this Order, to include a copy of this Order, upon the filing by Plaintiff of the bond hereinafter set.

This Order shall not be effective until Plaintiff deposits with the Harris County District

Clerk a bond in the amount of $_____ in due conformity with applicable law.

SIGNED and ENTERED this the _____day of April 2022, at _____ a.m./p.m.


_____
PRESIDING JUDGE

4/27/2022 1:35 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 63959895
By: Wanda Chambers
Filed: 4/27/2022 1:35 PM

# Marilyn Burgess

## HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

## Request for Issuance of Service

**CASE NUMBER:** _____   **CURRENT COURT:** _____

**Name(s) of Documents to be served:** _____

**FILE DATE:** _____ Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to**: _____

Address of Service: _____

City, State & Zip:_____

Agent (if applicable) _____

**TYPE OF SERVICE/PROCESS TO BE ISSUED**: (Check the proper Box)

☐ **Citation**   ☐ **Citation by Posting**   ☐ **Citation by Publication**   ☐ **Citations Rule 106 Service**

☐ **Citation Scire Facias**   **Newspaper**_____

☐ **Temporary Restraining Order**   ☐ **Precept**   ☐ **Notice**

☐ **Protective Order**

☐ **Secretary of State Citation ($12.00)**   ☐ **Capias (not an E-Issuance)**   ☐ **Attachment**

☐ **Certiorari**   ☐ **Highway Commission ($12.00)**

☐ **Commissioner of Insurance ($12.00)**   ☐ **Hague Convention ($16.00)**   ☐ **Garnishment**

☐ **Habeas Corpus**   ☐ **Injunction**   ☐ **Sequestration**

☐ **Subpoena**

☐ **Other (Please Describe)** _____

**(See additional Forms for Post Judgment Service)**

**SERVICE BY** (*check one*):
☐ **ATTORNEY PICK-UP (phone)** _____   ☐ **E-Issuance by District Clerk**
☐ **MAIL to attorney   at:** _____   **(No Service Copy Fees Charged)**
☐ **CONSTABLE**   *Note*: The email registered with EfileTexas.gov must be
☐ **CERTIFIED MAIL by District Clerk**   used to retrieve the E-Issuance Service Documents.
Visit www.hcdistrictclerk.com for more instructions.

☐ **CIVIL PROCESS SERVER -** Authorized Person to Pick-up: _____   Phone:  _____

☐ **OTHER,** *explain* _____

**Issuance of Service Requested By:** Attorney/Party Name: _____Bar # or ID  _____

Mailing Address:_____

Phone Number:_____

5/10/2022 6:40 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 64337699
By: Shanelle Taylor
Filed: 5/10/2022 6:40 AM

**CAUSE NO. 2022-25237**

| | | |
|---|---|---|
| **IRISH GUMBA** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| | § | |
| | § | |
| **LAKEVIEW LOAN SERVICING,** | § | |
| **LLC** | § | |
| *Defendant.* | § | **129TH JUDICIAL DISTRICT** |


## <u>DEFENDANT'S ORIGINAL ANSWER AND AFFIRMATIVE DEFENSES</u>

COMES NOW Defendant LAKEVIEW LOAN SERVICING, LLC (hereinafter "Defendant"), and files this, its Original Answer and Affirmative Defenses to Plaintiff's Original Petition, and in support thereof would respectfully show the Court as follows:

### <u>General Denial</u>

1.      Defendant asserts a general denial as is authorized by Rule 92 of the Texas Rules of Civil Procedure, and Defendant respectfully requests that Plaintiff be required to prove the charges and allegations against Defendant by a preponderance of the evidence as required by the Constitution and the laws of the State of Texas.

### <u>Affirmative Defenses</u>

2.      Plaintiff's damages, if any, which Defendant does not admit, were caused in whole or in part by Plaintiff's own acts, negligent or otherwise, and Defendant is therefore not liable.

3.      In addition to and/or alternatively, without waiving the foregoing, Defendant asserts that all conditions precedent to Plaintiff's rights to recover, if any, have not been satisfied, have not occurred or have not been waived.

4.      In addition to and/or alternatively, without waiving the foregoing, Defendant asserts that Plaintiff's possession has been continuous and uninterrupted and, therefore, Plaintiff has no damages.

5.      In addition to and/or alternatively, without waiving the foregoing, Defendant asserts that Plaintiff failed to mitigate her alleged damages, if any, which damages are strictly denied by Defendant.

6.      In addition to and/or alternatively, without waiving the foregoing, Plaintiff's claims are barred by the doctrine of unclean hands because Plaintiff failed to perform her contractual obligations, has failed to tender the sums due, and, therefore, Plaintiff is not entitled to any equitable relief.

WHEREFORE, THE FOREGOING CONSIDERED, Defendant prays that it be dismissed from this cause of action, and alternatively prays that upon trial of this cause of action, that the Plaintiff take nothing by reason of this suit, that the Defendant be awarded its reasonable and necessary attorney's fees, court costs and for such other and further relief to which Defendant may show itself to be justly entitled to, at law or in equity.

Respectfully submitted,

**BARRETT DAFFIN FRAPPIER
TURNER & ENGEL, LLP**

*/s/ R. Matthew Graham_____*
R. Matthew Graham
State Bar No. 24027186
4004 Belt Line Road, Suite 100
Addison, Texas 75001
(972) 340-7948 (telephone)
(972) 341-0734 (facsimile)
MatthewG@BDFGroup.com

ATTORNEYS FOR DEFENDANT

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that a true and correct copy of the foregoing Answer and Verified Denial has been delivered to all counsel of record or *pro se* parties pursuant to the Texas Rules of Civil Procedure on this the 10th day of May, 2022.

Robert C. Vilt, Esq.
5177 Richmond Avenue, Suite 1142
Houston, Texas 77056
clay@viltlaw.com

*/s/ R. Matthew Graham_____*
R. Matthew Graham

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Susan Lucero on behalf of R. Graham
Bar No. 24027186
susanll@bdfgroup.com
Envelope ID: 64337699
Status as of 5/10/2022 8:18 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Robert C. Vilt | 788586 | clay@viltlaw.com | 5/10/2022 6:40:59 AM | SENT |
| Raymond Matthew Graham | 24027186 | matthewg@bdfgroup.com | 5/10/2022 6:40:59 AM | SENT |
| Susan Lucero | | susanll@bdfgroup.com | 5/10/2022 6:40:59 AM | SENT |